Joyce L. PAYNE, Appellant,

v.

**SOFT SHEEN PRODUCTS,
INC., Appellee.**

No. 83–1218.

District of Columbia Court of Appeals.

Argued Sept. 13, 1984.

Decided Jan. 16, 1985.

Harris S. Ammerman, Washington, D.C., for appellant.

Edward J. Walinsky, Washington, D.C., with whom William J. Carter, Washington, D.C., was on brief, for appellee. Aaron M. Levine, Washington, D.C., also entered an appearance for appellee.

Before MACK, TERRY and ROGERS, Associate Judges.

MACK, Associate Judge.

Joyce L. Payne, the plaintiff below, appeals from a judgment entered upon a ruling of the trial court granting the motion of defendant, Soft Sheen Products Inc. (Soft Sheen), for a directed verdict.

Joyce Payne originally brought this action against Soft Sheen and Delavell Thrower to recover damages for second-degree burns sustained as a result of the application by Mrs. Thrower, a beautician, of a permanent wave product manufactured by Soft Sheen to Miss Payne's hair. The complaint alleged that the failure of the manufacturer and the beautician to warn of the product's dangers constituted breach of warranty and negligence, and in addition that Thrower had negligently applied the permanent wave solution to Payne's hair. On the first day of trial, the claims against Thrower were voluntarily dismissed, although a third-party claim by Soft Sheen against Thrower remained in the suit. The case was tried to a jury. At

the close of the plaintiff's evidence, a directed verdict was granted in favor of the remaining defendant, Soft Sheen. Soft Sheen then dismissed the cross-claim against Thrower. On appeal Payne contends that the evidence adduced at trial was sufficient to warrant submission of the case to the jury, and that the trial court erred in directing a verdict. We conclude that the grant of a directed verdict was improper, and we therefore reverse the judgment of the trial court.

I. *Facts*

Viewing the evidence in the light most favorable to appellant, *see Shewmaker v. Capital Transit Co.*, 79 U.S.App.D.C. 102, 103, 143 F.2d 142, 143 (1944), the facts of this case are as follows. On August 1, 1980, Joyce Payne purchased a permanent wave kit, "Jeri-Curl," at a drugstore, and then entered a local beauty shop, where Delavell Thrower, a licensed beautician, rented a booth. She asked Thrower to apply the "Jeri-Curl" to her hair, but Thrower said she was not familiar with that product and recommended instead a permanent wave manufactured by Soft Sheen called "Care Free Curl." At that time, Care Free was distributed only through licensed beauticians. Payne agreed to the use of Care Free, and then signed a release purporting to absolve Thrower of liability for any harm to Payne that might result from use of the product.

Thrower, called at trial as plaintiff's witness, testified that she conducted a strand test as recommended by the manufacturer of the permanent wave; in other words, she applied the wave product to a small portion of Payne's hair and found the results to be normal. After securing a towel and cape around Payne's neck, she applied the "rearranger," the first step in the Care Free Curl process, to plaintiff's hair. The rearranger consists of an ammonia-based chemical, ammonium thioglycolate, which penetrates the hair shaft and proceeds to soften and break down the hair's chemical bonds. A warning in small print at the end

of the instruction manual provided to the operator states:

This product contains ammonium thioglycolate. You must follow directions carefully to avoid skin and scalp burns, hair loss, and eye injury.

At the page in the manual actually giving directions for application of the rearranger, however, no similar warning is given. "Step 3" of the manual states only that the beautician should "[s]tart by draping the patron. Base the forehead, ears, neck and hairline with Soft Sheen's Hair & Scalp Conditioner. This step is important in the protection of your patron." The only other intimation in the main text of the instruction booklet that this chemical may cause injuries is a direction to the beautician to use gloves in applying it.

The rearranger remained on Payne's hair for the period of time prescribed in the directions, and then was rinsed off. Under "Step 4" of the manual, which sets forth the rinsing directions, there is again no warning to remind the beautician that care should be taken while rinsing the rearranger to prevent the product from running down the patron's back. Payne testified that she first felt a burning sensation following application of the rearranger, although her testimony on this score changed several times during the trial.

A second compound, the "neutralizer," was then applied to stop the action of the rearranger and stabilize the curl. The neutralizer contains two ingredients, bromate and urea, and is classified as a "mild irritant." In contrast with the limited safety instructions accompanying the directions for applying the rearranger, the neutralizer instructions are very explicit:

For the safety of you and your patron, do not spray on neutralizer.... Cover patron's entire hairline with a band of cotton and put on cape to catch neutralizer run-off. If cotton becomes saturated, change it. Do not let neutralizer drip onto skin. If some gets on face, neck or some other part of patron, rinse area

well and shampoo. The patron's safety is your responsibility.

At the end of the instruction manual, in small print under the heading "WARNING," the manual states: "If the permanent causes skin or scalp irritation, rinse out immediately and shampoo. If irritation persists ... consult a physician. If the rearranger gets into eyes rinse immediately and consult a physician." Thrower testified that she read the instruction manual, and that she had been given more detailed instructions on use of the product in two seminars held by Soft Sheen.

Following two applications of the neutralizer, Payne's hair was rinsed again. Payne stated that she continued to feel a burning sensation during the application of the neutralizer,[1] and that she informed Thrower of the problem. Thrower, however, seemed unsure about what action to take; and when the permanent process was completed, Payne ran home and soaked her back. Thrower testified that she heard no complaints from Payne until the next day, at which time Payne called her and said that she had developed a "rash." On August 2, 1980, Payne entered the emergency room of a local hospital, where she was diagnosed as having sustained a second-degree burn to her back. She was referred to a burn specialist, Dr. Marion Jordan.

Dr. Jordan testified that he treated Payne on August 4, 1980, at the Washington Hospital Center Burn Clinic. Jordan, who was qualified as a burn expert at trial, stated that Payne had suffered a second-degree burn, and explained that this meant that the "outermost area of the skin was certainly burned, there was a blister between that and the next layer, and there was apparently some damage to the dermis itself." The burn was "consistent with a burn from a chemical;" specifically, with an "ammonia type agent" (like the "rearranger" in the permanent wave product,

which contains ammonium thioglycolate). This ammonia agent, he stated, "would certainly be a causative chemical that could cause this kind of a skin burn." He further hypothesized that the chemical had run down into Payne's blouse, and had saturated the blouse material as it lay against her skin during the permanent process. He surmised that her back became burned in this way while her scalp remained free from injury due to the fact that the ammonia's ability to cause injury depends in large part upon the amount of oil in the skin. While the high density of oil glands in the scalp protects it against injury, the back is relatively unprotected.

Plaintiff's case consisted only of the above-related testimony by Payne, Thrower and Jordan.

## II. *Directed Verdict*

At the close of plaintiff's evidence, the trial court held:

Based on ... the testimony of Mrs. Thrower that she had no problem understanding these warnings, and based on the warnings which have been read into the record several times including what should be done if [the] chemical got on the skin and we talked about rinsing and the shampooing. Under all of these circumstances, gentlemen, and weighing everything that has been presented to me, I am going to grant the motion for directed verdict as far as Soft Sheen is concerned.

In this jurisdiction, a directed verdict may be granted a defendant only if the trial court, after considering all of the evidence in a light most favorable to the plaintiff, finds that reasonable minds could not differ on the single conclusion mandated by the evidence, *Johnson v. Weinberg*, 434 A.2d 404, 407 (D.C.1981). The plaintiff must be afforded every rational inference

---

1. At one point, upon inquiry from her counsel, Payne stated that she *first* felt a burn after the neutralizing step, despite her previous testimony that she had initially felt the burn following application of the rearranger. One of the diffi-

culties here is that Payne's counsel's theory of the case was that the neutralizer had caused the burns, despite the fact that all of the evidence he presented on this issue pointed to the rearranger as the causative agent.

from the evidence presented, *Gaither v. District of Columbia,* 333 A.2d 57, 59 (D.C. 1975). The court may take the case from the jury only if no reasonable juror could reach a verdict in favor of the plaintiff. *Sims v. East Washington Railway Co.,* 222 A.2d 641, 642 (D.C.1966); *Courtney v. Giant Food, Inc.,* 221 A.2d 92, 93 (D.C. 1966). In making this decision, the court may neither determine issues of fact nor weigh the testimony presented. *Felder v. Pinckney,* 244 A.2d 481, 483 (D.C.1968).

Keeping these standards in mind, we hold that to the extent that the trial court's ruling was based on its determination that the warnings contained in the product's instruction manual were adequate as a matter of law, the court impermissibly encroached upon the province of the jury. To the extent that the court found as a matter of law that the actions of the beautician, Thrower, constituted an independent intervening and superseding cause of Payne's injury that relieved the manufacturer of liability, that ruling was erroneous. Further, upon review of the record we find that Payne did establish a prima facie case against the product manufacturer for failure to warn adequately of the product's dangers, and we therefore reverse and remand.

### III. *Cause of Action for Failure to Warn*

A. Breach of Implied Warranty and Strict Liability

■ In her complaint, Payne set forth two theories of liability, negligence and breach of implied warranty. Payne later asserted that a strict liability cause of action was an "implied pendent claim" under the warranty count of the complaint. This problem of pleading need not detain us, however, because in the context of a claim that the product manufacturer's inadequate warnings caused injury to a consum-

er of the product, the plaintiff's burden under implied warranty and strict liability theories is identical.

■ This jurisdiction recognizes both tort and warranty theories of product liability. Warranty, though it has become associated with principles of contract, originated as a tort action, similar to an action for deceit. *Berman v. Watergate West, Inc.,* 391 A.2d 1351, 1355 (D.C.1978).[2] Although the warranty action sounded in tort, the warranty itself, in early cases, invariably arose out of a contract between the two parties.[3] Warranty therefore became inextricably linked to contract and an action on a warranty came to be considered a contract action. Standard contract concepts also became affixed to warranty actions, requiring a showing of privity of contract between the parties to an action on a warranty, allowing disclaimer of the warranty, and requiring notice by the complaining party to the manufacturer of a defect in the goods.[4] Nevertheless, "[i]t is undisputed that the original tort form of action [in warranty] ... still survives to the present day, and may everywhere be maintained."[5]

Recognizing that "[m]anufacturers should properly assume those burdens incident to the cost of doing business," even if they are separated by several links in a chain of distribution from the ultimate consumer, this court in *Picker X-Ray Corp. v. General Motors Corp.,* 185 A.2d 919 (D.C. 1962), held that warranty liability for defectively manufactured products "should no longer be dependent upon any contractual relationship between the manufacturer and the ultimate consumer or user." *Id.* at 921. This court in effect stripped the warranty action of its contractual baggage and reestablished the original tort action for warranty free of contract associations.

2. For a detailed discussion of the origins of warranty, *see* Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer),* 69 YALE L.J. 1099, 1126–28 (1960).

3. *Id.* at 1127.

4. *Id.* at 1127–31.

5. *Id.* at 1126. *See also* Kessler, *Products Liability,* 76 YALE L.J. 887, 900 (1967).

Moreover, warranty liability was to be imposed without regard to "concepts of negligence and fault, as defined by negligence standards." *Id.* at 922. This warranty liability was instead to be a form of strict liability: a plaintiff could recover if he established, first, that the product was defective, *i.e.*, not reasonably fit for its intended purpose or not of merchantable quality; and second, that as a result of the defect, the product caused injury. *Id.*

■ In 1965, the American Law Institute incorporated these standards into section 402A of the Second Restatement of Torts.[6] Comment m to section 402A made clear that

There is nothing in this Section which would prevent any court from treating the rule stated as a matter of "warranty" to the user or consumer. But if this is done, it should be recognized and understood that the "warranty" is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.

This court, in *Cottom v. McGuire Funeral Service, Inc.*, 262 A.2d 807 (D.C.1970), adopted the reasoning of comment m, finding that "to a large extent [it] is true" that the "doctrines of implied warranty and strict liability in tort are but two labels for the same legal right and remedy, as the governing principles are identical." *Id.* at 808. Under either theory, the court held, "there is a liability imposed for injury caused by placing a defective product into the stream of commerce in the District of Columbia." *Id.* at 809.

■ In sum, in the context of this case, where no issues unique to warranty, like disclaimer or notice, are presented, a claim of strict liability in tort was effectively made out by the count in the complaint for breach of warranty. *See also Fisher v. Sibley Memorial Hospital*, 403 A.2d 1130, 1133 (D.C.1979) ("actions for breach of warranty and strict liability in tort [are] expressions of a single basic public policy as to liability for defective products[;] it would [therefore] be inconsistent to hold that the doctrine of strict tort liability applies to [these facts] while rejecting plaintiff's breach of warranty claim."); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 427 (2d Cir.1969) (under Connecticut law, not error to refuse to instruct jury, in failure to warn

---

**6.** That section is as follows:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Comment c to the section explained its rationale this way:

[T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

That Payne is a "user or consumer" as that term is used in § 402A is made clear by comment *l* to that section: "Consumption includes all ultimate uses for which the product is intended, and the customer in a beauty shop to whose hair a permanent wave solution is applied by the shop is a consumer."

case, on theory of implied warranty in addition to strict liability, since in this context they are effectively identical).

## B. Negligence and Strict Liability

In ruling on Soft Sheen's motion for a directed verdict, the trial court summarized Payne's claim as follows: "[Payne] urges that there is a defect in the manufacture of this [permanent wave product] and that the warnings were such that they were inadequate...." Payne, however, had never claimed that the defect in the product was an error in the manufacturing process, and put on no proof to that effect. Her sole claim was that the instructions contained in the manufacturer's manual were inadequate to alert the beautician, Thrower, to the danger of the product, and that this failure by the manufacturer to adequately warn Thrower resulted in Payne's injuries.

 The negligence cause of action for failure to warn a consumer of a product's dangers is summarized in section 388 of the Second Restatement of Torts. That section sets forth the general rule that the supplier of a product is liable to expected users for harm that results from foreseeable uses of the product if the supplier has reason to know that the product is dangerous and fails to exercise reasonable care to so inform the user.[7]

 A plaintiff may plead a claim of manufacturer negligence in failing to warn about foreseeable harm from a product, may claim strict liability for injury derived from the same failure, or may do both. *Russell v. G.A.F. Corp.*, 422 A.2d 989, 991 (D.C.1980). In either case, the manufacturer's duty is the same: if its product "could result in foreseeable harm[8] [the manufacturer] has a duty to give a warning which adequately advises the user of attendant risks and which provides *specific* directions for safe use." *Id.*, citing *Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1086 (D.C. 1976);[9] *see also Young v. Up-Right Scaf-*

7. That section provides:
§ 388. Chattel Known to be Dangerous for Intended Use. One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

8. Although in this jurisdiction harm from an inadequately labelled product must be foreseeable by the manufacturer in order to be compensable, this is not the rule in every jurisdiction. The following cases hold that in a strict liability action for failure to warn, knowledge of the product's propensity to harm must be imputed to the manufacturer: *Beshada v. Johns-Manville Prods. Corp.*, 90 N.J. 191, 447 A.2d 539, 546 (1982); *Freund v. Cellofilm Properties, Inc.*, 87 N.J. 229, 432 A.2d 925, 932 (1981); *Little v. PPG Indus., Inc.*, 19 Wash.App. 812, 579 P.2d 940, 946

(1978), *aff'd,* 92 Wash.2d 118, 594 P.2d 911, 914 (1979); *Hamilton v. Hardy*, 37 Colo.App. 375, 549 P.2d 1099, 1106–07 (1976); *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky.1976); *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983, 988 (1975); *Phillips v. Kimwood Mach. Co.*, 269 Or. 485, 525 P.2d 1033, 1039 (1974). The bulk of the case law, however, holds that a manufacturer is not an insurer of his product, and that he may not be held liable for failure to warn absent a finding that the injury resulting from his product because it was inadequately labelled was reasonably foreseeable. *See generally* W. PROSSER & W. KEETON, THE LAW OF TORTS § 99, at 697 (5th ed. 1984) (a strict liability action for failure to warn "is really nothing more than a ground of negligence liability described as the sale of a product in a defective condition, subject, however, only to the defenses and other limitations on liability applicable to strict liability rather than negligence").

9. This is not to say that strict liability and negligence actions are identical in the failure to warn context. For example, contributory negligence is not a defense to a strict liability action. *Russell, supra,* 422 A.2d at 991 n. *; see* Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 MINN.L.REV. 791, 838–39 (1966) ("Where the negligence of the plaintiff consists only in failure to discover the danger in the product, or to take precautions against its possi-

*folds, Inc.*, 205 U.S.App.D.C. 264, 268, 637 F.2d 810, 814 (1980) (difference between two theories in failure to warn case lies not in manufacturer's duty but in defenses available to it); *In re Air Crash Disaster at Washington, D.C.*, 559 F.Supp. 333, 345 (D.D.C.1983). In this case we are dealing with a product that has "both utility and danger. It is well known that permanent wave solutions can never be made completely safe for all users...." *Beetler v. Sales Affiliates, Inc.*, 431 F.2d 651, 653 (7th Cir.1970). Such a product is not *unreasonably* dangerous (and therefore "defective") for purposes of section 402A if it is accompanied by an adequate warning.

ble existence, it has uniformly been held that it is not a bar to an action for breach of warranty.... But if he discovers the defect, or knows the danger arising from it, and proceeds nevertheless deliberately to encounter it by making use of the product, his conduct ... overlaps assumption of risk; and on either theory his recovery is barred."). *See also* RESTATEMENT (SECOND) OF TORTS § 402A comment n. In addition, where a defendant asserts that harm from a product was not foreseeable because it resulted from an allergy unique to the plaintiff, the burden of showing the existence of an allergy may be upon the defendant in a strict liability case. *See Newmark v. Gimbel's, Inc.*, 54 N.J. 585, 258 A.2d 697, 704 (1969). *See also* Kessler, *Products Liability*, 76 YALE L.J. 887, 930 n. 258 (1967) (under Restatement, manufacturer is under duty to exercise due diligence to discover whether or not allergic class may exist and to attach a clear warning where manufacturer should reasonably know of existence of class). The manufacturer is held to the knowledge and skill of an expert even in the area of allergic reactions, *see Wright v. Carter Prods., Inc.*, 244 F.2d 53, 58–59 (2d Cir.1957). By contrast, in a negligence case the plaintiff, once the defendant raises the defense of allergy, has the burden of showing either that he is not allergic, or that if he is, that there is a substantial class of allergic users and therefore his allergic reaction was foreseeable by the defendant. W. PROSSER & W. KEETON, LAW OF TORTS § 96, at 687 (5th ed. 1984). *But see Alberto-Culver Co. v. Morgan*, 444 S.W.2d 770, 776 (Tex.Civ.App.1969) (in warranty action against manufacturer of home hair dye product, once defendant has pleaded defense of allergy, burden is upon plaintiff to "either negate any allergy or hypersensitivity or to show that she was part of an appreciable class or number of persons who would have been reasonably foreseen to have been harmed by the product"), *disapproved, Crocker v. Winthrop Laboratories*, 514 S.W.2d 429, 432 (Tex.1974); *Corneliuson v.*

*See* comment j to section 402A ("In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.... [A] product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."); *see also* comment k ("There are some products which ... are quite incapable of being made [absolutely] safe for their intended and ordinary use.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous.") [10]

*Arthur Drug Stores, Inc.*, 153 Conn. 134, 214 A.2d 676, 678 (1965) (to show breach of warranty in claim for injuries resulting from permanent wave, plaintiff must show product contains an ingredient that has a tendency to affect an appreciable number of people injuriously); *Esborg v. Bailey Drug Co.*, 61 Wash.2d 347, 378 P.2d 298, 304 (1963) (in warranty action against manufacturer and retailer of home hair dye product, if confronted with defense of allergy or hypersensitivity, plaintiff must "produce substantial evidence" to show that the product "is harmful to a reasonably foreseeable and appreciable class or number of potential users of the product"). This issue need not be decided here because no defense of allergy was raised by the defendant.

10. An absence of a proper warning that may render a product unreasonably dangerous "can range from a complete absence of any warning to a warning which is given but is inadequate [citation omitted]. In connection with the latter range, the test of propriety has been expressed as whether the warnings given are 'reasonable under the circumstances.'" *Ortho Pharmaceutical Corp. v. Chapman*, 180 Ind.App. 33, 388 N.E.2d 541, 549 (1979) (citing *Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978, 993 (8th Cir.1969), and analogizing duty to that existing under § 388, *supra* note 7). When, as here, advertising did not induce purchase of the product, but the purchase was recommended by an intermediary who is a professional, the adequacy of the instructions must be judged in relationship to that professional. *See Helene Curtis Indus., Inc. v. Pruitt*, 385 F.2d 841, 860 (5th Cir.1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968); *see also Jackson v. H.R. Nicholson Co.*, 545 F.Supp. 762, 765 (D.D.C.1982) (no duty to warn ultimate consumer, prison inmate, of saccharin danger when Department of Corrections into whose care he is entrusted has been adequately warned).

■ Payne did have the burden of proof on two issues: to show, first, that the warning on the product was inadequate, and that the product was therefore defective, *i.e.*, unreasonably dangerous; and second, that the defect in the product proximately caused her injuries. The trial court ruled that plaintiff's proof had failed to raise facts on either of these issues sufficient to warrant submitting the case to the jury. This was error.

### 1. Adequacy of Warnings

■ It cannot be said as a matter of law that the warnings on the permanent product were adequate. It is true that the adequacy of warnings "cannot be evaluated apart from the knowledge and expertise of those who may reasonably be expected to use" the product, *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 465 (5th Cir. 1976). In this case, a warning that may be sufficient for a product distributed only through licensed beauticians, as this one was, may well be inadequate for the same product distributed through drugstores to consumers. The sufficiency of a particular warning, in light of the sophistication of its intended users, is ordinarily a question for the jury, however, *Burch v. Amsterdam*, 366 A.2d 1079, 1086–87 (D.C.1976).[11] This court, in *Burch*, held that in cases in which there is a potential for serious injury, the adequacy of even a relatively clear warning should not be determined as a matter of law but is a question of fact for the jury, *id.* at 1086–87.

■ The manufacturer's warning in this case that the ammonium thioglycolate contained in the product may cause burns is included within the step-by-step instruction manual, but not under the heading "Application of Chemical Rearranger," or "Rins[ing of] Chemical Rearranger from Hair"; instead, it is found only at the very end of the manual, in small print, following the heading "Customer Care at Home." It is a jury question as to whether or not this warning was adequate under the circumstances to warn the beautician of the danger of the ammonia component of the product.[12]

■ One element of an adequate warning is "a description of the precautions necessary to avoid the injury." *Ferebee v. Chevron Chemical Co.*, 552 F.Supp. 1293, 1304 (D.D.C.1982). The warning for the ammonia agent in the product says only that the instruction booklet must be followed carefully in order to avoid burns; and yet the instruction manual sets forth no specific instructions on this score, other than that the beautician should drape the customer and surround the scalp area with conditioning lotion.

■ In connection with the description of the second, "neutralizing" step of the process, the beautician is instructed, if the patron complains of burning, "to rinse area well and shampoo," and to prevent the neutralizer from dripping onto exposed skin. The beautician is also told that "the patron's safety is your responsibility." But no similar warning is given in connection with a part of the process much more dangerous, the rearranger step. In fact, although the warning at the end of the booklet states that the product contains ammonium thioglycolate, which can cause burns, at no point is the beautician informed that the *rearranger* contains the ammonium thioglycolate, not the neutralizer. The plethora of warnings surrounding the neutralizing step may well have misled the beautician into thinking that the burn-

---

**11.** *See also Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 86 (4th Cir.1962); *Baker v. St. Agnes Hosp.*, 70 App.Div.2d 400, 421 N.Y.S.2d 81, 86 (1979).

**12.** "Where a [manufacturer] fails to make reasonable efforts to attract attention to his warning or convey its urgency, a jury could reasonably find the failure to heed such a warning a natural and foreseeable result." *Ortho Pharmaceutical Corp. v. Chapman*, 180 Ind.App. 33, 388 N.E.2d 541, 557 (1979). The adequacy of a warning "depends, not only on its content, but also on its ability to catch the eye, inducing the user to read it." *Ferebee v. Chevron Chem. Co.*, 552 F.Supp. 1293, 1303 (D.D.C.1982).

causing ammonia agent in the product is found in the neutralizer.

The plaintiff here testified that she told the beautician, Thrower, that her back was burning, and that Thrower did not know what to do. Thrower contradicted this testimony, but it was not the function of the trial court to weigh the relative credibility of Payne and Thrower. In a similar case, where a plaintiff alleged that a manufacturer's inadequate warnings on a permanent wave product applied to plaintiff in a beauty parlor had caused her glaucoma, the court ruled:

> The nature of [the beautician's] treatment of plaintiff's pain, the relationship of that treatment to the alleged lack of directions by the defendant with respect to same, and the plaintiff's [behavior], are proper jury matters.

*Briggs v. Zotos International, Inc.*, 357 F.Supp. 89, 91 (E.D.Va.1973).

In sum, we cannot agree that as a matter of law the directions for Delavell Thrower's use were adequate. This is a jury question, precluding a directed verdict for the defendant.

 The manufacturer argues, in addition, that Thrower was independently aware of the danger, and that therefore no warnings were necessary.[13] We need not decide whether a plaintiff may recover from a manufacturer when an intermediary of this nature testifies that he is fully aware of the danger, because we do not agree that the evidence showed that Thrower knew with particularity of the danger.

 Thrower testified that she had attended several seminars arranged by Soft Sheen to demonstrate its products, and that she could infer from the directions for use of the permanent wave given at those seminars that it could cause injury. She never stated that she was told of its latent danger directly. Further, she was not aware of the chemical makeup of the two components of the product, or of the different types of injury that each component may cause. Even if the evidence showed that Thrower was generally aware of the dangerous propensities of Care Free Curl, a jury could find that in order to prevent this product from being unreasonably dangerous, specific warnings on the directions to remind the beautician of the danger, detailing the possible results of misapplication and the remedial measures to be taken in that event, are necessary. There was sufficient evidence in this case upon which the jury could base a finding that the actual warnings on the product here were insufficient and/or misleading.

### 2. Causation

 The manufacturer contends that plaintiff also failed to meet her burden of proof on the issue of causation: that even if the warning was inadequate, plaintiff failed to adduce sufficient evidence from which a jury could infer that it was Thrower's failure to read the inadequate warning that proximately caused the injury.

In this case there is no dispute that the product in some cases may cause burns. Plaintiff's case was not defective because she failed to put on evidence to that effect. On the question of whether the product had proximately caused Payne's injury in this case, plaintiff's evidence was sufficient to withstand a directed verdict. Plaintiff testified that she felt a burning sensation while the beautician was working; she entered a hospital emergency room the next day, and she produced records to show that she suffered second-degree burns.[14] Payne

---

13. *See, e.g., Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 645 (4th Cir.1981) (doctor testimony that he had independent knowledge of risk of vaccine insulates manufacturer from liability to patient for failure to warn).

14. This testimony alone, although circumstantial, may have been sufficient to allow the case to go to the jury. *See Guardian Ins. Co. v. Anacostia Chrysler-Plymouth, Inc.*, 320 A.2d 315, 317 (D.C.1974) (when direct evidence is unavailable in products liability case, circumstantial evidence sufficient); *Lang v. Federated Dep't Stores, Inc.*, 161 Ga.App. 760, 287 S.E.2d 729,

also supplied direct evidence: her treating physician, a burn expert, testified that an ammonia-containing product could have run down the back and caused the damage, even though it would not have burned the scalp. This evidence, and the inferences that could legitimately be drawn therefrom, were sufficient to allow the case to go to the jury.[15]

It is true that in strict liability cases, courts often pose the question of causation as being whether the defect in the product proximately caused plaintiff's injuries. In a defective design or defective manufacture case, the plaintiff's burden is therefore clear; he must show that but for the defect, the injury would not have occurred. In a failure to warn case, however, the problem is not the product itself, which was designed and manufactured as intended. The defect is the failure to attach adequate warnings to a product that, as designed and manufactured, may in certain circumstances cause injury.

Some courts, in keeping with the general rule that plaintiff must show that the defect proximately caused injury, have required the plaintiff to prove that it was the lack of warning that harmed the plaintiff. In other words, plaintiffs are required to show that, had an adequate warning been given, the user would have read and heeded it, and therefore, the accident would not have occurred. However, a rule requiring a plaintiff to prove not only that the failure to warn of a danger in a product made that danger unreasonable and that his injury grew out of the risk caused by that danger, but also that the failure to warn caused his injury, would impose an impossible burden on the plaintiff, and would often prevent his recovery because of pure speculation on the part of the jury.

Several courts have fashioned a presumption to deal with this problem, finding a rebuttable presumption in cases of this type that the user would have read an adequate warning, and that in the absence of evidence rebutting the presumption, a jury may find that the defendant's product was the producing cause of the plaintiff's injury. *See Ferebee v. Chevron Chemical Co.*, 237 U.S.App.D.C. 164, 736 F.2d 1529, 1538–39 (1984) (applying Maryland law); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1281 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). We agree with this approach to the problem, and therefore hold that plaintiff here met her burden of proof on the issue of causation.

### 3. Misuse and Intervening Cause

Soft Sheen also argues that if Payne's injury was caused by the product because it ran down her back, then the product was "misused" by the user, beautician Thrower. It alleges further, that negligence by Thrower in allowing the product to run down Payne's back was an intervening cause of the injury. Both the alleged "misuse" of the product and the alleged negligence of Thrower as an intervening and superseding cause, they contend, as a matter of law relieve the manufacturer of liability. In granting Soft Sheen's motion for a directed verdict, the trial court appeared to agree. For the following reasons, this was error.

Product "misuse" is defined as use of a product in a manner that could not reasonably be foreseen by the defendant. *Young v. Up-Right Scaffolds, Inc.*, 205 U.S.App.D.C. 264, 269, 637 F.2d 810, 815 (1980). Under both a negligence and a

---

731 (1982) (same; action against manufacturer of permanent applied in beauty parlor).

**15.** Evidence similar to Payne's was considered sufficient in the following cases: *Bathory v. Procter & Gamble Distrib. Co.*, 306 F.2d 22, 25 (6th Cir.1962) (burn caused by permanent wave); *Carpenter v. Best's Apparel, Inc.*, 4 Wash. App. 439, 481 P.2d 924, 927 (1971) (injury from

home permanent); *Patterson v. George H. Weyer, Inc.*, 189 Kan. 501, 505, 370 P.2d 116, 119 (1962) (damage to scalp from permanent wave applied in beauty parlor); *Mealey v. Super Curline Hair Wave Corp.*, 342 Mass. 303, 173 N.E.2d 84, 86 (1961) (skin burn caused by ammonia in permanent wave product).

strict liability theory, the manufacturer has an obligation to anticipate reasonably foreseeable risks of harm arising in the course of proper use, and to warn of those risks, *Westinghouse Electric Corp. v. Nutt*, 407 A.2d 606, 610 n. 5 (D.C.1979), *see Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 84 (4th Cir.1962). "Proper use" includes "the incidental and attendant consequences that accompany normal use," *Helene Curtis Industries, Inc. v. Pruitt*, 385 F.2d 841, 863 (5th Cir.1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). Whether the injury here arose out of proper use of the product, out of use that could reasonably have been foreseen by defendant, or out of product misuse, is a jury question and should not have been decided as a matter of law by the trial court.

▉▉▉▉ Similarly, negligence by an intervening actor will not relieve the manufacturer of liability if the negligence could reasonably have been anticipated, under both negligence and strict liability theories of recovery, *see* Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 MINN.L.REV. 791, 826–27 (1966). The manufacturer's action need not be the sole proximate cause of the injury: the manufacturer may still be held liable even though other causes proximately contributed to the injury. The question is whether the manufacturer's action was a proximate rather than a remote cause, and the test of proximate causation, again, is whether the result was reasonably foreseeable by the manufacturer.

▉▉▉▉ The existence of an intervening cause does not alter this test. *See Dreibelbis v. Bennett*, 162 Ind.App. 414, 319 N.E.2d 634, 638 (1974). Rather, where harmful consequences are brought about by intervening, independent forces (like the beautician's actions here) whose operation could have been foreseen, the chain of causation extending from the original act (if it is established as wrongful) is treated as a

proximate cause. *See Ortho Pharmaceutical Corp. v. Chapman*, 180 Ind.App. 33, 388 N.E.2d 541, 555 (1979). Whether the manufacturer's action here was a proximate cause of the injury, *i.e.*, whether it could reasonably have been foreseen that a chemical product with a propensity to burn that is applied to the hair as a lotion and then rinsed off might run down a patron's back and cause burns, is a question for the trier of fact, *see id.*[16]

## IV. *Expert Testimony*

Payne contends that the trial court erred in excluding the testimony of a Dr. Louis Decker, an industrial psychologist. In Payne's Identification of Expert Testimony provided pursuant to Super.Ct.Civ.R. 26(b)(4), she stated that Dr. Decker would testify that the instructions in the product manual for application of the *neutralizer* "constitute[d] a license to be careless and encourage[d] overuse of an inherently dangerous product." The trial court ruled that testimony by a beautician or some other expert familiar with this particular industry would have been admissible, but that this testimony would be excluded. We find no error in this ruling.

▉▉▉▉ Expert testimony as a rule may be admitted if it "will be likely to aid the trier in the search for truth." *Jenkins v. United States*, 113 U.S.App.D.C. 300, 306, 307 F.2d 637, 643 (1962). The decision whether to admit expert testimony, however, lies within the broad discretion of the trial court, whose ruling should be sustained unless clearly erroneous, *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C.1978); *see Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) ("manifestly erroneous" standard in federal cases). Here, no foundation was laid by counsel for Payne for this expert's testimony. There is no evidence in the record that the neu-

---

**16.** To hold the manufacturer liable, however, the trier must first determine that the product actually caused the injury and that the warnings accompanying the product were inadequate to apprise the beautician of the danger.

tralizer is anything other than a mild irritant to the skin, and therefore incapable of causing the injury sustained by Payne. Even if the adequacy of the warning surrounding the neutralizer were a relevant issue, in cases in which the primary facts are accurately presented to the jury and the jurors are as capable of understanding and drawing correct conclusions from the facts as an expert witness, the trial court may exclude expert witness testimony. *Salem, supra,* 370 U.S. at 35, 82 S.Ct. at 1122.[17] This is such a case, for there is "no question more appropriately left to a common sense lay judgment than that of whether a written warning gets its message across to an average person." *Ferebee v. Chevron Chemical Co.,* 552 F.Supp. 1293, 1304 (D.D.C.1982).[18] It cannot be said that the trial court's decision to exclude Decker's testimony was clearly erroneous, and this ruling is therefore affirmed.

For all of the above reasons, the decision of the trial court is

*affirmed in part and reversed in part, and remanded for a new trial.*

---

**17.** In general, "expert testimony is required [only] when the subject presented is 'so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman.'" *District of Columbia v. White,* 442 A.2d 159, 164 (D.C.1982) (quoting *Hughes v. District of Columbia,* 425 A.2d 1299, 1303 (D.C.1981)). The causes of action that *require* expert testimony are "rare," *Salem, supra,* 370 U.S. at 35, 82 S.Ct. at 1122.

**18.** Here, of course, the person reading the label is not an average consumer, but a licensed professional. As part of its case, therefore, the *defendant* might find it effective to introduce expert testimony to demonstrate that the average licensed beautician would find the product warnings clear. For where "a product is marketed solely to professionals experienced in using the product, the manufacturer may rely on the knowledge which a reasonable professional would apply in using the product." *Pavlides v. Galveston Yacht Basin, Inc.,* 727 F.2d 330, 338 (5th Cir.1984).