W.R. GRACE & COMPANY, Applicant,

v.

Joseph GALVAGNA, Jr.,
et al., Respondents,

OWENS–CORNING FIBERGLAS
CORP., Applicant,

v.

David GORDON, et al., Respondents,

ACandS, INC. et al., Applicants,

v.

Robert BELT, et al., Respondents,

GAF CORP., et al., Applicants,

v.

Dorothy COOPER, et al., Respondents,

FIBREBOARD CORP., et al., Applicants,

v.

Joseph GALVAGNA, et al., Respondents.

Nos. 93–DA–7 to 93–DA–11.

District of Columbia Court of Appeals.

Nov. 1, 1993.

Before STEADMAN and FARRELL, Associate Judges, and REILLY, Senior Judge.*

## ORDER

PER CURIAM.

On consideration of the applications for allowance of appeal, the certification of immediate appeal, the oppositions, responses, and supplemental opposition to the applications for allowance of appeal, the reply to the opposition, the motion to stay factual discovery, and the opposition to that motion; and it appearing that (1) an inadequate record exists upon which the court presently should decide most of the issues certified by the trial court; (2) only one of the certified issues, that of preemption, can arguably be said to present a *"controlling* question of law" (emphasis added) within the meaning of D.C.Code § 11–721(d), that issue in any event being one of nationwide relevance open for final determination only by the United States Supreme Court; and (3) on balance, "the disadvantages inherent in piecemeal review" would not "be substantially outweighed" in this case "by the possibility of mitigating what might otherwise be protracted and expensive litigation," *Plunkett v. Gill,* 287 A.2d 543, 544 (D.C.1972), it is

ORDERED that the applications for allowance of appeal are denied. It is

FURTHER ORDERED that the motion of William Chenault (who is not a party to these applications) to stay factual discovery is denied as moot.

* Judge Reilly would grant the applications for allowance of appeal in part for the reasons set forth in the attached statement.

REILLY, Senior Judge, dissenting:

As trial judges now rarely certify to us motions for leave to appeal interlocutory orders, I am ordinarily reluctant to turn down such requests. I agree with my colleagues, however, that it would be inappropriate to decide many of the issues certified to us in these cases, for an appellate court might be rash in passing on some of these questions in the absence of a trial record, revealing the factual background confronting the judges who made these rulings.

I disagree, however, with the refusal of the majority to grant immediate review of the ruling on federal preemption raised by the defendants, viz., that compliance with the regulation prescribing a particular type of warning by asbestos manufacturers and suppliers precludes common law remedies for failure to give adequate warnings. The issue raised is purely a question of law. According to the joint ruling of Judges Levie and Kollar–Kotelly, federal preemption is inapplicable in the absence of specific language in the text of the authorizing statute, directed at actions in tort founded on state common law in contradistinction to state statutes or regulations.

In my opinion, this challenged ruling was wrong or at least highly debatable in the light of two 1992 decisions of the Supreme Court, *Gade v. National Solid Wastes Management Ass'n,* —— U.S. ——, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992), and *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), which have cast doubt on the validity of the United States Circuit Court decisions upon which these two judges relied. The actual holding in *Cipollone* was that a federally prescribed label on cigarette packages preempted not only state statutes and regulations, but also barred tort actions by any persons attributing illness to the smoking of cigarettes contained in packages bearing such labels. *See Cipollone, supra* —— U.S. at ——, 112 S.Ct. at 2620. While there was no specific language in the Act of Congress expressly referring to law suits, the Court citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), held that the term "state law" includes common law as well as statutes and regulations.

It seems to me that the *Cipollone* holding squarely supports the instant motion to dismiss certain pending tort actions on federal preemption grounds. It is true that the asbestos warning notice regulation promulgated by the Occupational Safety and Health Bureau was authorized by a different Act of Congress, Pub.L. No. 91–596, § 2, 84 Stat. 1590 (Dec. 29, 1970), 29 U.S.C. §§ 651–678. One subsection of this statute, § 653(4), however, makes it clear that federal standards issued under its authority supersede state law unless such law is preserved by its provisions, viz.:

> (4) Nothing in this chapter shall be construed to supersede, or in any manner affect any workmen's compensation law or to enlarge or diminish the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees *arising out of, or in the course of employment.* [Emphasis supplied.]

The memorandum attached to the disputed ruling here reveals that the judges were aware of the impact of this savings clause, but—in my opinion—construed it much too narrowly. The cause of damage action recognized in the District against sellers of dangerous products for failure to give adequate warning notices cannot by any stretch of the imagination be called a "common law ... right arising out of, or in the course of employment." It is a right which can be claimed by any purchasers or users injured by the product, e.g., a customer in a beauty parlor suffering skin burns from application of a liquid hair dressing product, *Payne v. Soft Sheen Products, Inc.,* 486 A.2d 712, 719 (D.C.1985).

Indeed this distinction between the rights of a limited class and the rights of the general public was emphasized by our court in *Bowler v. Stewart–Warner Corp.,* 563 A.2d 344, 345 (D.C.1989), in which we explained the *Payne* opinion as showing that "the District of Columbia is a jurisdiction affording recovery for tortious injury to the ultimate consumer ...." (Emphasis supplied.) Hence, the lower court should have conclud-

ed under the federal savings clause, that plaintiffs claiming injury from exposure to asbestos were entitled to recover workmen's compensation from their employers, but were barred from suing the manufacturers or vendors of the product if it carried the prescribed warning notice.

We know from the documents presented to us that the Superior Court has been swamped by the hundreds of law suits filed here by asserted victims of asbestos exposure. Had we held that federal preemption applied to all the cases where the suppliers of the material had furnished the requisite warning notice, we could have afforded substantial relief for such a holding would, of course, have resulted in disposition of the bulk of these cases by motions to dismiss or for summary judgment.

Despite our postponement of this avenue of relief, it may not be too late for our beleaguered trial judges to expedite the disposition of this formidable volume of litigation by arranging for a different trial grouping of cases. As the introduction of the memorandum before us notes "discoveries in science and medicine, combined with developments in the law, have produced a fertile ground for mass tort litigation."

Judicial notice may be taken, however, of more recent studies which have discredited the premise of horrendous hazards stemming from exposure to any kind of asbestos. As an article in the Washington Times has pointed out,[1] there are two types of asbestos used in the United States: (1) chrysolite or white asbestos, recognized as harmless by a symposium at Harvard University in 1988, and (2) asbestos containing dangerous fibers known as amphiboles. It was a study of this second category many years ago by a famous scientist which provoked the asbestos scare. As white asbestos accounts for 95 percent of the fireproofing asbestos material installed in buildings in this country, it might be helpful if the trial courts would ascertain through pretrial discovery which category of asbestos the plaintiffs in the pending cases claim exposure, and then separate for trial the two different categories.

1. *See* Snow, *ABC's of Asbestos*, The Washington Times, Sept. 10, 1993, at F1.