**Lakeshia DYSON, personally and as Personal Representative for the Estate of Rico Monroe, Jr., Plaintiff**

v.

**PHARMACIA & UPJOHN, INC., Defendant**

**No. C.A. 97–1666 RCL.**

United States District Court, District of Columbia.

Jan. 19, 2001.

Garvey, Schubert & Barer, Washington, DC, for Plaintiff.

Vincent Hamilton Cohen, Hogan & Hartson, L.L.P., Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Now before the Court is a motion by the plaintiff to alter or amend this Court's Judgment of September 21, 2000. The defendant opposes this motion. After a full consideration of the Court's September Opinion and Judgment, the parties' memoranda, the applicable law, and for the following reasons, the Court DENIES the plaintiff's motion.

## BACKGROUND

Lakeshia Dyson, the plaintiff, ingested Provera while pregnant in 1992. Provera is manufactured by Pharmacia & Upjohn ("P & U"), the defendant. Dyson believes that the drug caused her son to be born with multiple birth defects that eventually led to his death. To recover for her loss, Dyson filed a products liability suit against P & U. In her suit, Dyson alleged that the drug was defective because it was not accompanied by an adequate warning to Dr.

Joseph Winfield, the prescribing physician. In her view, had an adequate warning been included in the product's packaging, Dr. Winfield would not have prescribed the drug to her and her child would not have been harmed.

Upon a motion for summary judgment by P & U, the Court found that Dyson had failed to present evidence that an inadequate warning, if any, caused Dr. Winfield to prescribe the drug. As support for this conclusion, the Court cited the unrebutted testimony of Dr. Winfield, who stated unequivocally that a different label on the drug would not have affected his decision to prescribe the drug. *See* Memorandum Opinion, Sept. 21, 2000, at 10. Finding that this lack of evidence "severed" the "chain of causation," the Court determined that Dyson's products liability case could not proceed to trial. *Id.* at 11.

Dyson now returns to the Court and urges it to alter its judgment. She asserts that the Court incorrectly applied controlling law. The Court now considers her argument.

## ANALYSIS

### I. Standard of Review

A motion to alter or amend a judgment is reviewed under the same standard as a motion for reconsideration. Upon a motion for reconsideration, a court will revise its decision if it finds "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or manifest injustice." *McDonnell Douglas Corp. v. NASA,* 109 F.Supp.2d 27, 28 (D.D.C.2000) (Lamberth, J.). *See also Firestone v. Firestone,* 76 F.3d 1205, 1206 (D.C.Cir. 1996); *EEOC v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir.1997). "A trial court has broad discretion to grant or deny a motion for reconsideration." *McDonnell Douglas,* 109 F.Supp.2d at 28. *See also Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 233–34, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995); *Liljeberg v. Health Services*

*Acquisition Corp.*, 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

## II. The Causation Issue

 After a second review of the issue, the Court finds that the plaintiff has failed to adduce evidence sufficient for a reasonable jury to conclude that she was injured as a result of the allegedly inadequate warning. The Court finds its decision to be squarely supported by the controlling precedent of *Mampe v. Ayerst Laboratories*, 548 A.2d 798 (D.C.1988).

*Mampe* involved a claim by an individual that an inadequately labeled drug caused her severe medical problems. She alleged that an adequate label would have apprised her physician of the attendant risks, and therefore would have prevented him from prescribing it for her. The District of Columbia Court of Appeals disagreed, finding that her evidence of causation was lacking:

> [the prescribing physician] specifically stated on several occasions that he did not rely on the manufacturer's warnings as a source of information about the possible adverse reactions to [the drug]. Rather, he acquired his knowledge from a 'variety of different kinds of communications,' including medical journals, lectures, and personal contact with his peers.

*Id.* at 802. Finding thus that the plaintiff "could not prove that the alleged inadequacy in [the drug's] warning was a proximate cause of her injuries," the Court affirmed the lower court's order of summary judgment against the plaintiff. *Id.*

The instant case is squarely on point with *Mampe*. Dr. Winfield unequivocally stated under oath that a change in the warning would have had no effect on his decision to prescribe Provera for the plaintiff. *See* Winfield aff. ¶ 10. Thus, like in *Mampe*, the chain of causation has been severed and the plaintiff's products liability claim must fail.

The plaintiff makes two arguments in her effort to change the Court's decision. First, she argues that *Payne v. Soft Sheen Products*, 486 A.2d 712 (D.C.1985) created a rebuttable presumption in inadequate warning cases that the deficient warning was the cause of the physician's decision to prescribe the medicine. The *Payne* court reasoned that to hold otherwise would be to impose an "impossible burden" on the plaintiff. *Id.* at 725. Whatever the exact holding of *Payne*, the fact remains that *Mampe* was decided after *Payne* and contains facts almost completely analogous to the instant case.[1] Therefore, the Court feels confident that its decision should be controlled by *Mampe*.

Second, the plaintiff argues that Dr. Winfield's statement that the drug label—whatever its content—was irrelevant to his decision to prescribe Provera is impossible to refute and thus creates an "impossible burden" for her to overcome.[2] Brief for Plaintiff, Oct. 6, 2000, at 4. This does not compel the Court to alter its decision. All sorts of situations might make it difficult to prove causation in a given case, but that does not mean that the causation requirement should automatically be abandoned. Rather, it should be required unless sound reason suggests otherwise, such as in cases under the *res ipsa loquitur* doctrine. Even if such reasoning might suggest a different decision in this case, this Court,

---

1. The Court expresses no opinion whether *Mampe* is inconsistent with, or may have partially overruled, *Payne*. Rather, the Court merely holds that *Mampe*, which is on point factually and has not been modified by any subsequent decision, controls the disposition of this case.

2. The plaintiff suggests in this respect that Dr. Winfield's statement is "self serving" and therefore suspect. Brief for Plaintiff, Oct. 6, 2000, at 4. The plaintiff, however, has failed to adduce evidence to support this allegation. The circumstances of his statement alone are insufficient, as it is quite unclear how Dr. Winfield—who is not a defendant on this issue—would serve his own interests by making such a statement.

sitting in diversity, is not empowered to undertake a *de novo* review of the District of Columbia's settled precedent.

The Court's judgment thus stands unaltered.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the plaintiff's motion to alter or amend the Court's September 21, 2000 Judgment is DENIED.

SO ORDERED.