Edward L. COTTOM, Appellant,

v.

The McGUIRE FUNERAL SERVICE, IN-
CORPORATED, a corporation, and Wil-
liam G. Johns, t/a Washington Casket
Service, Appellees.

No. 4859.

District of Columbia Court of Appeals.

Argued Nov. 3, 1969.

Decided March 6, 1970.

Milton A. Kallis, Washington, D. C., with
whom Leonard Z. Bulman, Washington, D.
C., was on the brief, for appellant.

James F. Bromley, Washington, D. C.,
with whom Thomas M. O'Malley, Wash-
ington, D. C., was on the brief, for appellee
The McGuire Funeral Service, Inc.

No appearance for appellee Johns.

Before HOOD, Chief Judge, and FICK-
LING and KERN, Associate Judges.

HOOD, Chief Judge.

This case is before us on an agreed statement on appeal, showing the following facts.

Appellant Cottom was a pallbearer at a funeral conducted by The McGuire Funeral Service, a corporation. On the day of the funeral Cottom and the other pallbearers, holding the handles on the sides of the casket, carried it from the funeral parlor to the hearse. They then proceeded to the church and there removed the casket from the hearse and prepared to carry it into the church. After they had taken a few steps the handle of the casket on the side opposite Cottom broke away. This caused the casket to fall and strike and injure Cottom.

Cottom brought this action to recover damages for his injury against McGuire Funeral Service, which had sold the casket to the family of the decedent,[1] and William G. Johns from whom McGuire had purchased it.[2]

At trial Cottom based his case on three different theories: negligence, res ipsa loquitur, and breach of implied warranty. The only error seriously advanced on this appeal concerns the issue of implied warranty. In directing a verdict in favor of both defendants, the trial court ruled that although there was a latent defect in the casket, Cottom was not a "user" of the casket and there was no relationship or responsibility between him and the defendants.

In Picker X-Ray Corp. v. General Motors Corp., D.C.Mun.App., 185 A.2d 919 (1962), this court was faced with deciding the relationship and responsibility between a manufacturer and a purchaser of its product. Following the trend of decisions in other jurisdictions, we ruled that privity was not a requirement in implied warranty actions, holding that "regardless of the lack of contractual privity, the implied warranty of fitness and merchantability runs to the ultimate consumer for whose use the article or personal property had been purchased." (185 A.2d at 923.)

Since our decision in Picker X-Ray, the trend appears to be towards a complete abandonment of any concept of contract law in cases of injuries caused by defective products, and the imposition on the manufacturer and sellers of a strict liability in tort. See Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963). Other cases so holding are collected in 1 American Law of Products Liability § 5A:2 (Supp. 1969). The strict liability doctrine has been adopted in the Restatement (Second) of Torts § 402A (1965). In comment "1" to the foregoing section it is said: "The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and defendant."[3]

It has been said that the current doctrines of implied warranty and strict liability in tort are but two labels for the same legal right and remedy, as the governing principles are identical.[4] This to a large extent is true. The differences between strict liability in tort and implied warranty, if any, are conceptual. "Implied warranty recovery is based upon two factors: (a) The product or article in question has been

1. We fail to understand the contention in McGuire's brief that there was no evidence of a sale of the casket by McGuire. Such contention is flatly contradicted by the agreed statement on appeal.

2. The casket had been purchased by Johns from an out-of-State manufacturer who is not a party to this action.

3. Under certain circumstances, the theory of strict liability in tort has been applied in favor of a mere bystander, i. e., one who is neither a user nor consumer. See Mitchell v. Miller, 26 Conn.Supp. 142, 214 A.2d 694 (Super. Ct.1965).

4. Jackson v. Muhlenberg Hosp., 96 N.J. Super. 314, 232 A.2d 879 (1967), rev'd on other grounds, 53 N.J. 138, 249 A. 2d 65 (1969).

transferred from the manufacturer's possession while in a 'defective' state * * * and (b) as a result of being 'defective', the product causes personal injury or property damage." [5] On the other hand, strict liability in tort is imposed on a manufacturer "when an article he places on the market * * * proves to have a defect that causes injury to a human being" [6] or his property. [7] Whether contract or tort, there is a liability imposed for injury caused by placing a defective product into the stream of commerce in the District of Columbia. [8] For present purposes we are not required to adopt the theory of strict liability in tort with all its implications.

 Our immediate problem is, under the established law of this jurisdiction, may Cottom, the injured party, recover and against whom recovery may be allowed? There is no question that in this jurisdiction a purchaser can recover from his immediate seller and from the manufacturer of a defective product for injury to his person or property. [9] In the case at bar, however, appellant was not a purchaser and appellee Johns was not the manufacturer or retailer, but the wholesaler. Thus, we are faced with two issues both new in this jurisdiction: Is a nonpurchaser entitled to recover for injuries caused by a defective product and, if so, can he recover against the wholesaler of said product? [10] We answer both questions in the affirmative.

There is no logical or legal reason why only a purchaser may recover for injuries sustained due to a defective product. The cases are too numerous to mention where nonpurchasers have been allowed to recover. [11] Certainly, an intended user or consumer is entitled to as much protection as a purchaser. [12] We cannot agree with the trial court that appellant "was not the user of this coffin, in any sense of the word." Obviously, coffins are "used" for burial. But the handles on the sides of a coffin are for the purpose of transporting it, at least during the occasion of a funeral procession.

5. Picker X-Ray Corp. v. General Motors Corp., D.C.Mun.App., 185 A.2d 919, 922 (1962). *See also* McCrossin v. Hicks Chevrolet, Inc., D.C.App., 248 A.2d 917 (1969); Simpson v. Logan Motor Co., D.C.App., 192 A.2d 122 (1963).

6. Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 700, 377 P.2d 897, 900, 13 A.L.R.3d 1049 (1963).

7. Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 22, 403 P.2d 145, 152 (1965).

8. In the present case, we are not confronted with any conceptual problems which may arise from calling the action warranty or tort, *e. g.*, the effect of a warranty disclaimer or the effect on a suit only for a commercial loss and not for personal injury or property damage. *Compare* Seely v. White Motor Co., *supra* n. 7; Price v. Gatlin, 241 Or. 315, 405 P.2d 502 (1965), *and* Santor v. A and M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965). *See also* Talley v. Campbell Music Co., Inc., D.C.App., 219 A.2d 852 (1966); U.C.C. § 2–719(3).

9. McCrossin v. Hicks Chevrolet, Inc., *supra* n. 5; Picker X-Ray Corp. v. General Motors Corp., *supra* n. 5.

10. Appellee, McGuire Funeral Service, urges that the issue of whether a nonpurchaser is entitled to recover already has been decided in the negative. Appellee relies on several cases which we do not view as determinative of the issue. These cases are fully discussed in Picker X-Ray Corp. v. General Motors Corp., *supra* n. 5, 185 A.2d at 921.

11. *See, e. g.*, Greeno v. Clark Equipment Co., 237 F.Supp. 427 (N.D.Ind.1965) (employee of lessee); Thompson v. Reedman, 199 F.Supp. 120 (E.D.Pa.1961) (passenger in another automobile); Hinton v. Republic Aviation Corp., 180 F. Supp. 31 (S.D.N.Y.1959) (airplane passengers); Greenman v. Yuba Power Products, Inc., *supra* n. 6 (family); Jacob E. Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942) (family of purchaser). *See* cases collected in 1 American Law of Products Liability § 5A:19 (Supp.1969).

12. Appellee McGuire argues that, as this case arose under the Uniform Sales Act, only a purchaser is protected. This argument was sufficiently answered in Picker X-Ray Corp. v. General Motors Corp., *supra* n. 5, 185 A.2d at 922–23.

■ Appellant was an intended user of the handles on this casket. He can recover if he can prove that the product entered the stream of commerce in a defective state, that the defect existed at the time of the injury, and that the defect caused the injury. McCrossin v. Hicks Chevrolet, Inc., D.C.App., 248 A.2d 917, 919 (1969).

■ The question then becomes: From whom can appellant recover? He can recover from the retailer,[13] in this case appellee McGuire Funeral Service. He can also recover from the wholesaler Johns. The wholesaler brought the product into the District, and he cannot insulate himself from liability solely because he did not "deal" with the injured party.[14]

The trial court erred in holding that appellant was not a "user" of the product and that no responsibility was owed him by either appellee. The motions for a directed verdict should have been denied.

Reversed with instructions to grant a new trial.

---

13. McCrossin v. Hicks Chevrolet, Inc., *supra* n. 5; Simpson v. Logan Motor Co., *supra* n. 5.

14. *See* Canifax v. Hercules Powder Co., 237 Cal.App.2d 44, 46 Cal.Rptr. 552

(1965). *But cf.* Price v. Gatlin, *supra* n. 8. *See also* Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362, 365 (Mo.1969).