**Maxwell YOUNG et al., Appellants,**

v.

**UP-RIGHT SCAFFOLDS, INC.**

**No. 79–1961.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 13, 1980.

Decided Dec. 19, 1980.

Gerard E. Mitchell, Washington, D. C., for appellants.

Francis J. Prior, Jr., Arlington, Va., for appellee. Robert L. Ellis, Arlington, Va., was on the brief for appellee.

Before TAMM, ROBB and MIKVA, Circuit Judges.

Opinion for the court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

On September 26, 1977, plaintiff Maxwell Young was injured when the scaffolding he was disassembling collapsed. He and his wife sued the company that sold the scaffolding to Young's employer to recover damages for injuries sustained in the accident. The complaint included counts alleging that the defendant was liable in tort on the basis of negligence and on the basis of strict liability for a defective product. The plaintiffs appeal from a jury verdict in favor of the defendant on the ground that, under applicable District of Columbia law, the jury instructions given by the trial judge constituted reversible error. The challenged instructions assumed that local courts would not recognize a strict liability claim sounding in tort for damages sustained as the result of a product defect. Because we agree with plaintiffs that the District of Columbia courts would recognize such claims, we reverse and remand for another trial.

## I. BACKGROUND

### A. *The Accident*

In the summer of 1977, the British Embassy purchased span scaffolding from Up-Right Scaffolds, Inc. (Up-Right) to be used in exterior maintenance work at the Embassy. Mr. Moody, an employee and sales representative of Up-Right, visited the Embassy on several occasions and recommended span scaffolding that could be assembled by a single man and would reach certain dormer windows.

Pursuant to these recommendations, the Embassy purchased four span extension sections and one span base section. The dormer windows could be reached by erecting the extension sections on top of the base section. After this scaffolding was delivered, Mr. Moody demonstrated its assembly for the benefit of painters and other workmen. Sales brochures and labels permanently attached to the scaffolding also illustrated the proper assembly method.

Neither the scaffolding labels nor the sales brochures indicated how the base unit

was to be disassembled. Evidence at trial indicated, however, that it was customary to disassemble scaffolding in the reverse order of assembly. Neither the assembly instructions (on the scaffolding labels or in the sales brochures) nor Mr. Moody suggested, however, that there was any danger of collapse if disassembly was not done in that order.

On September 26, 1977, Maxwell Young, a carpenter, disassembled a scaffolding tower that had been erected on a flat roof to reach the dormer window. The tower had been erected in the manner approved by Up-Right. While the scaffold was being taken down, it collapsed and injured the plaintiff.

At the time of the collapse, plaintiff Young, who is five feet six inches tall, was standing on a horizontal platform near the bottom of the base unit. He had just finished taking down the scaffold tower and had begun to disassemble the base unit in the sequence in which he had taken down the tower. As he did so, the scaffolding rotated and collapsed, causing the plaintiff to tumble to the ground.

The accident would not have happened if Young had disassembled the base section in the reverse of the order in which it had been assembled, rather than the order in which the upper sections had been disassembled. There was, however, expert testimony that it was foreseeable that a five foot six inch worker would stand on the bottom platform while disassembling the base unit, and would disassemble it in the order in which he had taken down the upper sections.

### B. Proceedings Below

Maxwell and Ellen Young filed this complaint on July 11, 1978, in the United States District Court for the District of Columbia, and the case was tried by a six-person jury. Count I was a claim based on strict liability in tort.[1] The jury instructions, as initially proposed by the court, included an instruc-

tion requested by the plaintiffs on the doctrine of strict liability in tort. This instruction was, however, deleted by the trial court over the objection of plaintiffs' counsel and was never given to the jury.

After less than an hour of deliberation, the jury returned a note stating that they found both sides at fault and seeking further guidance. The court instructed the jury that if they found both the plaintiff and the defendant negligent, their verdict should be for the defendant. Shortly thereafter, a verdict for the defendant was returned.

## II. APPROPRIATE JURY INSTRUCTIONS

Plaintiffs argue that the trial court erred in (1) instructing the jury to return a verdict for the defendant if both Young and the defendant were negligent, (2) failing to give an instruction on the doctrine of strict liability in tort, and (3) failing to instruct the jury that contributory negligence is not a defense to a strict liability claim.

Defendant argues that the decision below should be affirmed for three reasons. First, the District of Columbia has not adopted the theory of strict liability in tort. Second, liability in this case is based on defective labelling. Even in a strict liability jurisdiction, the appropriate standard of care in such a case is negligence—and there was, therefore, no need to give any special or separate strict liability instructions. Third, the error, if any, was harmless because the plaintiff's contributory negligence can be recharacterized as either product misuse or assumption of risk, both of which are valid defenses in strict liability cases.

### A. Strict Liability in the District of Columbia

Under the doctrine of strict liability in tort for product defects, a merchant who sells an unreasonably dangerous product to a consumer is liable for resultant injuries,

---

1. The complaint contained six counts. Count II alleged breach of express warranties. Count III alleged breach of implied warranties. Count

IV alleged negligence. Count V alleged a claim for consortium. Count VI alleged a claim for subrogation.

regardless of fault, or privity of contract. *See, e. g.,* Restatement (Second) of Torts § 402A (1965); 1 R. Hursh & H. Bailey, American Law of Products Liability 2d §§ 4:1, 4:6 (1974); W. Prosser, The Law of Torts § 98 (4th ed. 1971). Although no District of Columbia court has, as yet, found a defendant strictly liable for product defects in an action sounding in tort, D.C. courts have imposed liability in cases involving implied warranties and negligent failure to warn of product dangers without any requirement of privity of contract. In so doing, D.C. courts have indicated their adoption of strict liability.

In *Russell v. GAF Corp.,* 422 A.2d 989, (D.C.App. 1980), the plaintiff was injured when a sheet of corrugated asbestos cement shattered during installation. The plaintiff sued the manufacturer for failure to warn of an inherent product danger in an action based on both negligence and strict liability. Although the D.C. Court of Appeals did not expressly state that the strict liability claim alone would support liability, the language used does suggest that the court has adopted strict liability:

> Appellant labelled his complaint against ... GAF as a claim based on both negligence and strict liability in tort. A plaintiff may limit the claim to negligence in failing to warn about foreseeable harm from a product, ... or claim strict liability for injury derived from the same failure. *See* Restatement (Second) of Torts § 402A, Comment j (1965).

At 991 (citation omitted).

Several implied-warranty cases provide further support for the proposition that D.C. courts have adopted strict liability. In these cases, liability has been imposed without any requirement of privity of contract or negligence on the part of the defendant. In *Cottom v. McGuire Funeral Service, Inc.,* 262 A.2d 807 (D.C.App.1970), the D.C. Court of Appeals held that a pallbearer, injured when the handle came off a casket, could recover from the seller and the manufacturer of the casket if he could prove that the product entered the stream of commerce in a defective state, that the defect existed at the time of his injury, and that the defect caused the injury. In reaching this conclusion, the court noted that "[t]he differences between strict liability in tort and implied warranty, if any, are conceptual." *Id.* at 808.

In *Berman v. Watergate West, Inc.,* 391 A.2d 1351 (D.C.App.1978), the D.C. Court of Appeals held that a company marketing defective cooperative apartments could be held liable for damages flowing from the breach of express and implied warranties. Since the defendants were liable under a warranty theory, there was no need to decide whether a claim could be made under a strict liability theory as well. The court nevertheless discussed the history of strict liability and indicated that a strict liability claim would be recognized by D.C. courts.

The court indicated its acceptance of the theory of strict liability by referring to *Cottom,* discussed above, as "[t]he court decision from which adoption of strict liability in tort can be inferred." *Id.* at 1357. The court quoted extensively from *Cottom* and cited, as further support, a decision in which this court concluded that the District of Columbia courts had adopted the theory of strict liability. *Id.* (citing *Stewart v. Ford Motor Co.,* 553 F.2d 130 (D.C.Cir. 1977)).

The defendant attempts to weaken the force of *Berman* by arguing that the *Berman* court's reference to *Cottom* as "[t]he case from which our adoption of strict liability in tort can be inferred" was merely an explanation of the CCH Product Liability Law Reporter's conclusion that D.C. courts have adopted strict liability. It is true that the court referred to CCH's conclusion immediately before making the quoted reference to *Cottom. Id.* at 1356. But we do not agree that the *Berman* court was merely explaining CCH's conclusion. The court began a new paragraph with the statement that adoption of strict liability is

implicit in *Cottom* [2]—and in no way indicated that these words were not its own.

Moreover, the defendant misunderstands our role in matters of local law. Defendant seems to think we parse D.C. cases as if they were statutes and recognize strict liability claims only if that result is mandated by D.C. law. Our role, however, is to decide a case as we think a D.C. court would decide it. *See, e. g., Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C.Cir.1980) ("Lacking a controlling District of Columbia decision on the issue in question, our task is to apply the rule we believe the District of Columbia Court of Appeals would follow today."). Clues, leanings, dicta, and textual references are all legitimate sources from which to glean such a course. Viewed from this perspective, *Russell, Cottom*, and *Berman* point in only one direction: a D.C. court would follow the vast majority of American jurisdictions and recognize plaintiffs' strict liability claim.

Defendant continues to argue, however, that special strict liability instructions would not have been necessary in this case because the factual basis of plaintiffs' complaint is defective labelling. We turn to that contention.

B. *Jury Instructions for Defective Labelling*

■ As discussed above, strict liability in tort imposes liability for unreasonably dangerous products regardless of the fault of the defendant. If a product is dangerous only because it has not been labelled properly, however, the fault of the defendant *is* relevant to the question whether the labelling is adequate. Such a product is unreasonably dangerous only if it was reasonably foreseeable that the product, as labelled, would cause injuries. *See, e. g.*, 1 R. Hursh & H. Bailey, American Law of Products Liability 2d § 4:13 (1974). If the defendant

was not negligent in labelling the product, it follows that the product was not unreasonably dangerous.

Defendant maintains that since the appropriate standard of care in such a strict liability action is negligence, no special strict liability instructions were needed in this case. This argument ignores other differences between negligence and strict liability. Although contributory negligence is a defense in a negligence action, almost all courts refuse to recognize it as a defense in a strict liability action, *see, e. g.*, 1 R. Hursh & H. Bailey, *supra*, § 4:35, at 737, and this approach has been adopted by the D.C. Court of Appeals.

In *Russell v. GAF Corp.*, discussed above, the plaintiff claimed damages for failure to warn of an inherent product danger on the basis of both negligence and strict liability theories. Although failure to warn, like defective labelling in the case at bar, requires negligence on the part of the defendant, *see id.*, at 991, the court stated that there were nevertheless differences between strict and negligent liability: "The availability of strict liability may determine, for example, whether a manufacturer will be permitted to proffer a defense of contributory negligence." *Id.* at 991 n.* (citing 1 R. Hursh & H. Bailey, *supra*, §§ 4:34, 4:35, 8:36).

■ In this case, the judge should have given an instruction indicating that contributory negligence is not a defense to a strict liability action. Such an instruction was not given, and when the jury informed the judge that it found both sides at fault, the judge told the jury to return a verdict for the defendant. This was reversible error. The jury did not mention what kind of fault it had found on either side—and should have been told that negligence on the part of Young would not automatically bar his recovery.

2. *Id.* at 1356–57 (footnotes omitted):

At the date of this writing, the CCH Products Liability Reporter lists 45 states as having adopted the concept. One other state and the District of Columbia are cautiously placed on this list with a footnote reading "inferred by court decision."

The court decision from which our adoption of the concept of strict liability in tort can be inferred is *Cottom v. McGuire Funeral Service, Inc.*, D.C.App., 262 A.2d 807 (1970).

### C. A Comparison of Contributory Negligence, Assumption of Risk, and Product Misuse

■ Defendant next contends that the contributory negligence instruction was nevertheless harmless error because contributory negligence is indistinguishable from product misuse and assumption of risk, both of which are valid defenses to strict liability claims. Defendant claims that even if plaintiff Young was not contributorily negligent, he either misused the product or assumed the risk of this accident. In support of this contention, Up-Right points out that a yellow and black label was attached to the scaffolding and illustrated the assembly process. Plaintiff testified that he probably read this label and forgot it. He also testified that he saw the sales brochures containing similar information. Defendant argues that "this disregard of clear instructions should bar plaintiffs' recovery." Brief of Appellee at 12. We do not agree.

On the facts of this case, it is quite possible that a jury would consider the plaintiff contributorily negligent but not guilty of assumption of risk or product misuse. The "clear instructions" on the label were only for assembly, not disassembly. Nowhere did the label instructions indicate that taking down the base unit in the order in which the upper sections had been disassembled would be dangerous. There was no evidence the plaintiff was ever aware of this hazard. Assumption of risk requires conscious apprehension of danger. See, e. g., 1 R. Hursh & H. Bailey, supra, § 4:36, at 739–42. On these facts, it is quite possible a jury would have found that Young did not assume any risk.

Product misuse is use of a product in a manner not reasonably foreseen by the defendant. See id. § 4:35, at 737. In this case, there was testimony that it was foreseeable that a workman would stand on a platform attached to the bottom rung of the base unit while beginning to disassemble it and would disassemble the base in the order in which the upper units had been disassembled. A jury might well have concluded that Young did not misuse the product.

Defendant is correct in saying that conduct can often be the basis for any one of the three defenses discussed here. It does not follow, however, that these defenses are always interchangeable. The facts of the case at bar illustrate this point. Because the plaintiff does not appear to have been conscious of any danger and because his use of the product may have been reasonably foreseeable, it is possible that the jury would have considered him contributorily negligent but not responsible for product misuse of assumption of risk. We thus conclude that the error below was not harmless.

### CONCLUSION

No District of Columbia court has held a defendant liable for a product defect solely on the basis of a strict liability claim sounding in tort. District of Columbia cases indicate, however, that strict liability claims would be recognized by local courts. If the jury had been properly instructed in the case at bar, it might have returned a verdict for the plaintiffs on the basis of the strict liability count. Because the jury was not given the appropriate instructions—and was actually given an instruction inconsistent with strict liability—we reverse and remand for another trial.

*Reversed and remanded.*