Peter J. WAINWRIGHT, Plaintiff,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Schindler Elevator Company, Westinghouse Electric Corporation, and Westinghouse Elevator Company, Defendants.

Civ. A. No. 93–0044 (RCL).

United States District Court, District of Columbia.

Oct. 17, 1995.

# I. FACTUAL BACKGROUND

This is a personal injury action brought by Plaintiff Wainwright, a California resident, against WMATA and Co–Defendants Schindler Elevator Company, Westinghouse Electric Corporation and Westinghouse Elevator Company (collectively "Schindler"). WMATA is a state and interstate agency created by the United States Congress and adopted by the governments of the District of Columbia, Maryland and Virginia. D.C.Code § 1–2431; Md.Code Ann. [Transp.] §§ 10–201, *et seq.*; Va.Code Ann. §§ 56–529 *et seq.* WMATA owns and operates a public transportation system for the Washington, D.C. metropolitan area, including the Metrorail subway system ("Metro"). Schindler designed, manufactured and installed escalators for use in Metro subway stations. Schindler also maintains the escalators under contract with WMATA. Westinghouse was Schindler's predecessor.

Wainwright states in his complaint that he was exiting the Dupont Circle Metrorail Station on July 2, 1991 when his right foot became trapped in an escalator between the step and the combplate. His efforts to free his foot were unavailing, as were his immediate attempts to elicit help in turning off the escalator. Wainwright seeks $15 million in compensatory damages and $15 million in punitive damages. WMATA has crossclaimed for indemnity or contribution against its co-defendants.

Eight counts are alleged by Wainwright: (1) Failure by WMATA to maintain; (2) Negligent supervision by WMATA; (3) Failure by WMATA to warn; (4) Breach by WMATA of its duty as a property owner to use reasonable care; (5) Failure by Schindler to maintain; (6) Strict liability against WMATA and Schindler for design defects; (7) Strict liability against WMATA and Schindler for failure to warn; and (8) Breach of implied warranty by WMATA and Schindler. Count five, against Schindler alone, is not addressed here; nor are the claims against Schindler in counts six, seven and eight.

WMATA raises five defenses in its response to Wainwright's complaint. First, WMATA asserts that Wainwright has not stated a claim upon which relief can be

Robert Brian Cave, Emily M. Yinger, Hogan & Hartson, L.L.P., Washington, DC, for Plaintiff.

Robert John Kniaz, Gerard Joseph Stief, WMATA, Office of General Counsel, Washington, DC, for WMATA.

Edward T. Longosz, Miles & Stockbridge, Washington, DC, for Schindler Elevator Company.

Adam White Smith, Fairfax, VA, for Westinghouse (Both Defendants).

## *MEMORANDUM OPINION*

LAMBERTH, District Judge.

Defendant Washington Metropolitan Area Transit Authority ("WMATA") has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Upon consideration of the filings of counsel and the relevant law, WMATA's motion for summary judgment is granted in part and denied in part. The motion is granted with respect to count three (failure to warn), count six (strict liability for design defects), count seven (strict liability for failure to warn) and count eight (breach of implied warranty). The motion is denied with respect to count one (failure to maintain), count two (negligent supervision), and count four (property owner's breach of reasonable care). Finally, the court grants WMATA summary judgment dismissing claims against it for punitive damages.

granted. Fed.R.Civ.P. 12(b)(6). Second, WMATA pleads an affirmative defense of contributory negligence and assumption of the risk. Third, WMATA contends that Wainwright's injuries were caused by persons other than WMATA employees. Fourth, WMATA denies that punitive damages are available against a government agency. Fifth, WMATA claims immunity against design decisions and supervisor-related claims under Section 80 of the WMATA Compact.

## II. ISSUES

In its motion for summary judgment, WMATA proffers four arguments for dismissal of all counts in which it is a named defendant. First, WMATA notes that Wainwright invoked his Fifth Amendment privilege against self-incrimination when asked in his deposition about alcohol and drug use on the day of his accident. Because WMATA is pleading an affirmative defense of contributory negligence, the invocation by the plaintiff of a testimonial privilege could deny WMATA the opportunity to develop its case.

Second, WMATA asks that any claims for punitive damages be dismissed as contrary to public policy; there can be no retributive or deterrent purpose served in exacting monetary penalties from subway riders or taxpayers. Third, WMATA asserts sovereign immunity for all governmental or discretionary functions, as contrasted with proprietary or ministerial functions. Among the functions WMATA places in the immune category are design decisions, supervisory decisions and whether to post warnings. Fourth, WMATA disclaims liability for breach of implied warranties which, announces WMATA, can only be assessed against the manufacturer of the escalator.

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *E.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct.

1598, 1608, 26 L.Ed.2d 142 (1970). As this case arises under the District Court's diversity jurisdiction, 28 U.S.C. § 1332, the law of the District of Columbia governs. The Rules of Decision Act, and hence *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), do not strictly apply with respect to D.C. law; nonetheless, we apply D.C.'s substantive law for reasons of uniformity, and respect for the D.C. Court of Appeals. *Anchorage–Hynning & Co. v. Moringiello,* 697 F.2d 356, 360–61 (D.C.Cir.1983).

## III. PLAINTIFF'S TESTIMONIAL PRIVILEGE

Wainwright invoked his Fifth Amendment privilege against self-incrimination when asked in his deposition about alcohol and drug use on the day of his accident. Without Wainwright's answers to these questions, WMATA contends it cannot adequately develop its contributory negligence defense. Because contributory negligence is an absolute bar to recovery under District of Columbia law, *Andrews v. Wilkins,* 934 F.2d 1267, 1272 (D.C.Cir.1991), WMATA urges dismissal of all Wainwright claims grounded on negligence.

Other circuits have held that a plaintiff may not use a Fifth Amendment privilege both as a shield against self-incrimination and as a sword to frustrate defendant's discovery. *See, e.g., Lyons v. Johnson,* 415 F.2d 540, 542 (9th Cir.1969). But in *Black Panther Party v. Smith,* 661 F.2d 1243 (D.C.Cir.1981), the District of Columbia Circuit adopted a balancing test, weighing the plaintiff's Fifth Amendment privilege against the defendant's right to the information. *Id.* at 1266. Factors to be considered included the importance of the information and whether alternative, non-privilege sources had been exhausted. *Id.* at 1268. *Black Panther* was ultimately vacated by the Supreme Court on mootness grounds. *Moore v. Black Panther Party,* 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982). Nonetheless, the rationale advanced by the D.C. Circuit remains a useful indicator of its views, even if not authoritative law.

In this case, plaintiff Wainwright refused to answer a number of inquiries specifically

related to drug and alcohol use. His selective refusal does not equate to more general obstruction of discovery. Moreover, WMATA has not pursued other sources of information pertaining to plaintiff's possible impairment at the time of his accident. There is no indication that WMATA has sought to depose other witnesses, including the person who ultimately pressed the emergency stop button, the station attendant, rescuing firefighters and police, hospital personnel, nor the treating physician. Unless and until WMATA can convince the court that it has depleted alternative sources, Wainwright's invocation of the Fifth Amendment can not be cause for summary judgment. As the plaintiff properly noted, dismissal should be a remedy of last resort. *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087 (5th Cir.1979); *see also Shepherd v. ABC, Inc.*, 62 F.3d 1469, 1478–79 (D.C.Cir.1995).

Indeed, even if WMATA could demonstrate that it had exhausted its options, summary judgment would likely be premature. More appropriately, the court would first grant a WMATA motion to compel discovery. Fed.R.Civ.P. 37. Only then, if Wainwright persisted in asserting his Fifth Amendment privilege, might a dismissal of the negligence-based counts be justified.[1]

## IV. PUNITIVE DAMAGES

■ Section 80 of the WMATA compact provides that the Authority is "liable for its contracts and for its torts ... committed in the conduct of any proprietary function...." Since the Compact does not explicitly authorize punitive damages, WMATA concludes that its common law immunity remains intact.

In support, WMATA offers several cases in which it was a litigant. *See, e.g., Lucy v. WMATA*, No. 87–1630 slip op. (D.D.C. Nov. 4, 1988) ("unequivocal case law of this jurisdiction makes it patently clear that a claim for punitive damages may not be appropriately asserted against WMATA, as there is no express statute authorizing such an [sic]

claim"); *Savoy Construction Co. v. WMATA*, Civ.Action No. 83–75 (D.D.C. Aug. 23, 1983) (punitive damages against WMATA prohibited absent statutory authorization); *Davis v. WMATA*, Civ.Action No. 82–1684 (D.D.C. 1983) (punitive damages against WMATA would only penalize taxpayers and riders who did no wrong); *Thomas v. WMATA*, Civ.Action No. 82–2509 (D.D.C.1983) (highly unlikely that drafters of the Compact intended to impose punitive damages on WMATA).

Wainwright maintains that "extraordinary circumstances" vindicate a departure from the usual edict against punitive damages. For that proposition, he cites *Smith v. District of Columbia*, 336 A.2d 831 (D.C.App. 1975). In fact, *Smith* observes merely that no punitives would be awarded absent extraordinary circumstances—thus implicitly sanctioning punitives under unspecified bizarre conditions. Nowhere in *Smith* is there guidance as to the nature, frequency, duration, intensity or other characteristics of the requisite "extraordinary circumstances." And nowhere does Wainwright cite case law awarding punitive damages against WMATA or any comparable entity. By contrast, as noted above, WMATA has offered several cases to the contrary.

The extraordinary circumstances on which Wainwright relies consist of WMATA's repeated disregard for known hazards. After numerous entrapments in Metro escalators, WMATA was well aware of the dangers. Its own Task Group identified safety problems and recommended corrective measures. WMATA has not implemented many of the Task Group's suggestions. Of course, cynics might observe that bureaucracies routinely ignore their own reports. True or not, this court is disinclined to elevate such acts to the level of aberrant behavior necessary to upend well-established policy and precedent forswearing punitive damages.

## V. IMMUNITY UNDER THE WMATA COMPACT

The WMATA Compact, D.C.Code § 1–2431(80), states in relevant part:

---

1. Wainwright advised the court by praecipe filed August 29, 1995, that he is now willing to answer questions about drug or alcohol use on the day of the accident, but not about prior or subsequent use. WMATA can move to compel answers to the broader questions after exploring alternative sources of the information.

The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function ... but shall not be liable for any torts occurring in the performance of a governmental function.

■ Whether a function is proprietary or governmental is a question of federal law because the WMATA Compact is an act of Congress. *Sanders v. WMATA,* 819 F.2d 1151, 1154 (D.C.Cir.1987). The core of the inquiry is "whether a particular activity involves a legislative, administrative or regulatory policy decision or merely implements such a decision. Only the former type of action, a policy decision, is a 'discretionary function' which should be immune from second-guessing by a jury." *McKethean v. WMATA,* 588 A.2d 708, 713 (D.C.1991) (citing *Sanders,* 819 F.2d at 1154–55).

WMATA claims immunity from litigation under counts three and seven (failure to warn), count six (design defects), and count two (negligent supervision).

## A. Failure to Warn and Design Defects

■ The District of Columbia Circuit has held that design and planning of a transportation system are governmental activities; they involve quasi-legislative policy decisions which are discretionary in nature and thus immune from suit. *Dant v. District of Columbia,* 829 F.2d 69, 74–75 (D.C.Cir.1987). The court distinguished between design on the one hand and negligent operation and maintenance on the other. WMATA was subject to attack "*only* insofar as [plaintiff] can establish that the injury alleged is directly attributable to negligent maintenance and operation, and not to negligent or faulty design." *Id.*

Duty to warn has also been held to be a discretionary function for which the government retains immunity. *Shuman v. United States,* 765 F.2d 283, 291 (1st Cir.1985). Analogous matters, like whether to install traffic lights or roadway markings, have been deemed discretionary as well. *Freeman v. City of Norfolk,* 221 Va. 57, 266 S.E.2d 885, 886 (1980).

Wainwright's response is twofold. First, he states that his claims relate to the *implementation* of safety decisions, not to design or warnings. If so, then Wainwright can press his claims under counts one, two and four (failure to maintain, negligent supervision, and property owner's breach of reasonable care—negligence actions that remain alive notwithstanding our dismissal of the strict liability counts).

Second, Wainwright argues that WMATA's immunity does not extend to actions grounded in strict liability. "Because strict liability is imposed for the mere existence of an unreasonably dangerous product, without considering the wisdom of any discretionary decisions involved in designing the product, the reasoning supporting WMATA's immunity is inapplicable to the strict liability claims...." Plaintiff's Opposition to Defendant WMATA's Motion for Summary Judgment, at 13. Since strict liability circumvents the determination of fault, Wainwright believes that such suits do not second-guess the political, social or economic judgments of a government agency. *Id.*

■ This is a rather tangled argument on several fronts. The essence of strict liability is that defendants may be held accountable independent of fault. It would truly be remarkable if the government were to be immune from attack for the most culpably negligent acts while accepting liability for acts committed without any fault whatsoever. Further, there is no provision in the WMATA Compact that would hint at a distinction between strict liability claims and negligence claims. Section 80 of the Compact is, after all, a waiver stipulation; and what is not waived remains intact. Waivers in the Compact attach to proprietary, ministerial functions. *Dant,* 829 F.2d at 74–75. The nature of the function governs, not the cause of action under which it is litigated.

The Federal Tort Claims Act presents an interesting analog. Federal immunity for tort claims is waived by the Act, with several exceptions. Among the exceptions is "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty...." 28 U.S.C. § 2680(a). Thus, immunity is re-

tained for discretionary functions, just as in Section 80 of the WMATA Compact. The Supreme Court has held that the Federal Tort Claims Act does not authorize the imposition of strict liability of any sort upon the Government. *Laird v. Nelms,* 406 U.S. 797, 803, 92 S.Ct. 1899, 1902–03, 32 L.Ed.2d 499 (1972).

In short, there is no basis on which to conclude that WMATA has waived its immunity for design defects and failure to warn. Accordingly, WMATA's motion for summary judgment on counts three, six and seven is granted.

### B. Negligent Supervision

██ Next, we examine the immunity asserted by WMATA for count two, negligent supervision. In *Jon v. WMATA,* C.A. No. 86–2468 (D.D.C. March 5, 1987), Judge Gesell dismissed a claim of negligent hiring, training and supervision on the premise that administering employees is a discretionary function. Wainwright, in his response to WMATA's motion for summary judgment, does not dispute this issue. Instead, Wainwright simply maintains that immunity for negligent supervision would not protect WMATA from respondeat superior liability for negligence of its employees in the performance of a proprietary function.

Section 80 of the Compact expressly affirms Wainwright's respondeat superior theory. "The Authority shall be liable for . . . torts . . . of its . . . employees . . . committed in the conduct of any proprietary function. . . ." On the other hand, that question was not raised by WMATA. The underlying issue is not respondeat superior but negligent supervision.

Despite misdirected opposition from Wainwright, and despite Judge Gesell's opinion in *Jon,* this court is unwilling to adopt WMATA's characterization of employee training and supervision as a discretionary function subject to sovereign immunity. The prevailing view is contrary. Most recently, in considering allegations of negligence by the District of Columbia in supervising the conduct of a police officer, the D.C. Court of Appeals held that "this case involves no issue of discretionary or 'quasi-legislative policy decisions.'" *District of Columbia v. Banks,* 646

A.2d 972, 984 (D.C.1994) (Farrell, J., concurring) (quoting *McKethean,* 588 A.2d at 713–14).

Similarly, the D.C. Circuit had "no doubt that the activities [of] supervising and instructing officers . . . are ministerial, not discretionary, acts. They involve day-to-day operational matters, not planning and policy." *Biscoe v. Arlington Cty.,* 738 F.2d 1352, 1363 (D.C.Cir.1984). And this court has held that "the acts of training, instructing, supervising and controlling the individual officer are merely 'ministerial.'" *Thomas v. Johnson,* 295 F.Supp. 1025, 1031 (D.D.C.1968). "From the very nature of these activities, it is clear that they do not involve the kind of policy-formulating, judgment-making processes encompassed by the term 'discretionary.'" *Id.*

Considering the clear weight of judicial opinion, WMATA's motion for summary judgment on count two is denied. WMATA has waived its immunity for the ministerial acts of supervision and training.

## VI. BREACH OF IMPLIED WARRANTY

██ Finally, WMATA insists, in conclusory fashion, that count eight, breach of implied warranty, cannot be sustained as a matter of law because WMATA is neither the manufacturer nor seller of the escalator. Wainwright responds, in a footnote, that WMATA is liable because it was an integral part of the distribution system that placed the allegedly defective product into the stream of commerce. *Berman v. Watergate West, Inc.,* 391 A.2d 1351, 1359 (D.C.1978). The parties devote scant attention to this cause of action—for good reason.

██ It is certainly correct that District of Columbia law imposes liability for injury caused by placing a defective product into the stream of commerce. *Cottom v. McGuire Funeral Service, Inc.,* 262 A.2d 807, 808–09 (D.C.1970). But it is equally correct that "the difference between strict liability in tort and implied warranty, if any, are conceptual." *Id.* at 808. Where there are no issues unique to warranty, a claim of strict liability in tort is effectively made out in a complaint for breach of warranty. *Payne v. Soft Sheen Products, Inc.,* 486 A.2d 712, 720 (D.C.1985).

In *Bowler v. Stewart–Warner Corp.*, 563 A.2d 344, 347 (D.C.1989), the court concluded it was error for the trial judge to have given instructions in both strict liability and implied warranty of merchantability, since the two theories represent but one tort. This court agrees. Breach of implied warranty and strict liability in tort are expressions of a single basic public policy as to liability for defective products. *Fisher v. Sibley Memorial Hospital,* 403 A.2d 1130, 1133 (D.C.1979).

Count eight, breach of implied warranty, is nothing more than count six, strict liability for design defects, masquerading in contract garb. Accordingly, and for the reasons set forth in discussing design defects (Part V.–A *supra* ), WMATA's motion for summary judgment as to count eight is granted.

## VII. CONCLUSION

Defendant WMATA's motion for summary judgment is granted with respect to count three (failure to warn), count six (strict liability for design defects), count seven (strict liability for failure to warn) and count eight (breach of implied warranty). The motion is denied with respect to count one (failure to maintain), count two (negligent supervision), and count four (property owner's breach of reasonable care). The court grants WMATA's motion dismissing claims against it for punitive damages.